JOHN S. SHEPARD, PLAINTIFF IN ERROR, *vs.* WILLIAM KELLY, DE-
FENDANT IN ERROR.

The act of December 11th, 1824 in relation to the foreclosure of mortgages by proceedings in the courts of law, requires *personal* service of notice of the intention of the party to institute his suit. If a party acknowledges service of notice, or appears and pleads or confesses judgment, it is sufficient under this statute to give jurisdiction of the person of the defendant.

An agreement by a defendant under his hand and seal to confess judgment is not a power of attorney to confess judgment and is not within the prohibition of the statute.

A decree or judgment of foreclosure need not contain any more specific description of the property than a reference to the deeds of mortgage, filed with the petition, which specifically set forth the property mortgaged.

A judgment or decree of foreclosure under the statute should not award execution against the specific property mortgaged. The law requires that execution shall issue thereon as in other cases.

The following statement of this case was made by the Court before proceeding to announce its decision:

This was an action at law brought by Kelly for the foreclosure of two mortgages, which he held to secure to him payment of a debt or liability due to him from Shepard, the plaintiff in this Court and defendant below, or at the time of making said mortgages, to become due, and be paid in two instalments as in the said mortgages expressed : one of said mortgages purporting and expressed to be cumulative to the other as security for the same debt or liability for the consideration of an abatement or remission of twenty per cent. of the liability for which the original mortgage was given. The petition sets forth that, when the first instalment on said mortgages became due and payable, the plaintiff instituted suit and obtained a judgment for principal and interest of said first instalment, and decree for foreclosure of all right and equity of redemption of or in the said mortgaged property—and in this suit he alleges the second and last instalment to be due, and prays judgment for that and a foreclosure of the equity of redemption in the mortgaged property mentioned in the said two mortgages.

Upon the petition filed in the Court below by the said Kelly the plaintiff in that Court, the following endorsement is made :

" In Leon Circuit Court. I, John S. Shepard, Mortgagor, defendant in this petition, do hereby acknowledge due and legal service of notice of intention of petitioner to institute this suit, consenting that said petition shall be filed as of the first day of the Spring Term, 1847, of Leon Circuit Court, and do hereby under my hand and seal confess judgment, and agree that decree of foreclosure be rendered at said Spring Term, 1847, of Leon Circuit Court, with a stay of execution till the first day of February A. D., 1848, eighteen hundred and forty eight.

" Witness my hand and seal.

    (Signed)   " JOHN S. SHEPARD, Seal."

Upon this state of case the Court, under and by authority of the act to authorize the foreclosure of mortgages in the Courts of common law of Dec. 11th, 1824, Duval's laws, p. 38, gave judgment at law for the plaintiff, Kelly, for the sum of $9066,40, his principal and interest, and also for   his costs, to be taxed by the clerk of the court, and also adjudged, ordered and decreed a foreclosure of the equity of redemption, against the defendant Shepard, mortgagor, and all persons claiming or to claim by, through, or under him, of or in the mortgaged premises, in the said deeds of mortgage in said petition set forth and therewith exhibited, and that execution issue according to the statute in such case made and provided, with stay of execution until after the first day of February, 1848, according to the agreement to confess judgment. The following entry also appears in the record preceding the trial, judgment and decree above mentioned :

     "Principal sum,  $7,727,06 1-4

. " Interest from 1st Feby. 1845

" to 1 May 1847, 2 y. 2 M. at

" 8 per c.,        1,339,34

           ————————

" Due 1 May 1847, second instalment, $9066,40.

      Princ. and Int.

" The above calculation I believe to be correct.

    (Signed)   " JOHN S. SHEPARD."

On 6th April, 1848, a motion was made to amend the decree entered in this case at the Spring term, 1847, by inserting a particular description of the mortgaged property therein instead of the reference to the petition and mortgage, which motion was granted, and on the

31

7th day of the same month in open court an amended decree in said suit was made and placed of record *nunc pro tunc*, in which the mortgaged premises are specified. Upon which said proceedings, petition, consent and agreement of said defendant Shepard, final judgment, decree of foreclosure and amended decree, the defendant Shepard obtained a writ of error returnable before this Court, and assigns his errors as follows :

First. The agreement to confess judgment is void under the statute.

Second. There is error in giving one foreclosure on two mortgages.

Third. There is error in the original judgment, because the property foreclosed is not mentioned.

Fourth. There is error in the judgment as amended, because it awards execution against the specific property only.

Fifth. The judgment is incomplete.

Sixth. It does not appear by the amended judgment, how much of the original entry is meant to be retained, nor how much is meant to be abandoned.

Seventh. The judgment as it now stands is irregularly entered, and inconsistent in its several parts.

Eighth. The Court had no jurisdiction under our statute to render judgment for the debt and foreclosure of the mortgage, because it appears from the petition that said mortgages had been foreclosed at a former term of the Court, so that when this suit was instituted no mortgage existed to be foreclosed.

*Archer*, for plaintiff in error :

The judgment is entered as by confession. This is error. The alleged confession, endorsed on the petition, was made before the petition was filed, and before suit instituted. This is proved by the endorsement of filing by the clerk, which is made in pursuance of the agreement, as a thing *previous to the filing*. A confession before suit is void under the statute, and the Court erred in acting upon it as valid. The waiver or acknowledgement of notice is simultaneous with the alleged confession, but if it were prior in time, the suit cannot be said to have been instituted before the Court by such notice, for the notice under the statute is not by judicial writ, but only by

writing prepared and signed by the party plaintiff, and is a notice not of suit *instituted,* but of an intention to institute a suit in future.— This intention is carried out only by the filing of a *petition* according to the statute, and by such filing the Court is *first advised* of the suit. From this latter date, therefore, the suit may be said to commence.

The agreement endorsed cannot conclude the plaintiff in error, so as to operate as a confession of judgment, or as a " general release of errors"—at all events, not as a " general release of errors," for these are the words of the statute. But if this agreement is no " general release of errors," then it can neither be a judgment by confession, or by agreement or consent—for there can be no such thing as a judgment by confession or consent, which is not "a release of errors." No appeal lies (where the Court has jurisdiction) from a judgment by confession or consent, and, consequently, if the plaintiff's judgment is affirmed, on the ground that it is a proper confession of judgment, and, consequently, a release of errors, then that is done which the statute prohibits, viz : the defendant is concluded from assigning errors in this Court, by reason of an agreement made before suit. It is against the policy of the statute, that a defendant, before suit instituted, and before he has the benefit of advice of counsel, should be forestalled in his defence by injudicious consents, confessions, or releases.

2. The judgment is on two mortgages, which in the foreclosure are treated as *one.* Each mortgage is a separate security, and should be so recognized in the judgment, as well as petition. The decree should be in equity for the sale of the property first mortgaged—and if that was insufficient, of sufficient of the property last mortgaged to make up the deficiency. This is necessary to preserve regularity. Under the *statute,* I cannot understand how two mortgages can be foreclosed in one proceeding. A second mortgagee, holding a subsequent lien on the property in Kelly's second mortgage, would be entitled to redeem the property in second mortgage, by paying so much of Kelly's claim as the property in the first mortgage failed to pay. How could such subsequent mortgagee redeem, if the foreclosures were amalgamated, without being required to pay the whole debt, and discharge the property in the first mortgage ? The irregularity in this respect is apparent, and can only be cured by separate proceedings on each mortgage, and as this cannot be done under

the statute, without giving two judgments for the same debt, it would follow that the foreclosure of one of the mortgages should have been had in equity. See the concluding paragraph of opinion of the Chief Justice, in the case of Parkhill's administrators v. Union Bank.

These objections apply to both the original and amended judgments. There is an additional objection to the original judgment, for which the judge in the Court below quashed the execution in the first instance, and which gave rise to the amended judgment, viz : that the foreclosure does not name the property foreclosed, but refers to a paper, not part of the decree, for a specification of the property. This was clearly fatal. A judgment, to be regular and certain, should contain on its face, and not by reference, all the requisites of a judgment, For example, a judgment in favor of the heirs of A. B., would be invalid and erroneous, although it might be easily ascertained who were the parties entitled as such heirs. So a judgment "for the sum mentioned in the note appended to the declaration," would be erroneous for want of certainty.

There are also objections to the amended judgment :

1. It awards execution against the mortgaged property, and that alone, which is contrary to the statute, there being no " other cases" in which such execution is awarded or issued. Besides, this mode absolutely requires the sheriff to seize *all* the property, more than twice sufficient in value to pay the debt. But for the judgment authorizing it, such seizure would be a trespass, and certainly that judgment is erroneous which seeks to justify a trespass. Again : this process is an infringement of a *right* secured by statute to every defendant in execution, viz : the right to substitute other property in lieu of that levied on. Such substitution cannot be permitted under the process required by the judgment, because such process does not authorize the sale of any *other* than the mortgaged property.

2. The amended judgment is irregular—it is incomplete—it is but the conclusion of a judgment, and not only bad on that account, but it does not define how much of the original entry is retained, and how much repealed. Where is the point of junction, at which a union of the two entries takes place, is left uncertain. The judgment should have been entered as an amended judgment, *complete*, and entered *nunc pro tunc* in lieu of the original. For this defect, there is an uncertainty, which is fatal. The first requisite of a judgment is certainty, for by it the rights of the parties are finally settled.

*Thompson,* for defendant in error.

I.—It is alleged by the plaintiff in error, among other positions, that the court below had no jurisdiction of this cause, for the reason, as he contends, that the plaintiff had no existing mortgage to secure his debt when he filed his petition.

The counsel for the plaintiff in error and myself differ very widely on this point, for I contend that there was not only a valid and sub-sisting mortgage, but the question of "*jurisdiction,*" as I understand the meaning of the term, does not arise in the cause.

1. As to the question of jurisdiction. This is truly said to be the power to hear and determine a cause. Now, whether the instrument sued upon is or is not a mortgage, is a question to be decided by the Court when the parties come before it, upon the pleadings and proofs, and whether it decides affirmatively or negatively, it is the exercise of jurisdiction. So the very position assumed by counsel here could not have been maintained by the Court below, if it had been urged there, except by the exercise of jurisdiction. 9 Bac. Abr. 245, tit. "*statute,*" is cited to the point, that if a new remedy be given by statute, in a particular case, this shall not be extended to alter the common law *in any other case.* I admit the principle, but deny its application to the case at bar. I do not contend that the statute of 1824, authorizing the foreclosure of mortgages by the courts of com-mon law, alters the common law in any other case than that of mort-gages ; but in this respect I do contend, that it alters the common law in divers particulars, as will be hereafter shown. Nor do I con-sider the citations from the sup. U. S. Digest in anywise more favor-able to the plaintiff in error, so far as I have been enabled to exam-ine the Reports from which the notes are extracted. This is not a *summary* proceeding, nor does it profess to be, nor is it, in fact, so "*stringent*" a remedy, as it is argued to be. The object of the statute evidently is to unite the powers of the law and equity courts in the application of a remedy—and while it would avoid multiplicity of suits, it favors the mortgagor, by greatly restricting, if not entirely abolishing, the old common law doctrine of *foreclosure,* which, in many instances, would bear rigorously upon the mortgagor. Instead of ordering the property to be delivered up to the mortgagee, and cutting off forever the power to redeem, it provides for a sale of the property under execution as in other cases, extending, *ex debito,* the privilege of redemption up to the time of sale, and giving him the

advantage of a sale, and the surplus, if any remained after the payment of the debt. By the common law, too, the mortgagee, after he obtained possession, and barred the redemption by his decree of foreclosure, might bring an action at law, and recover on his debt, whatever he could establish to the satisfaction of a jury the mortgaged premises were insufficient to satisfy. All this difficulty, and the vexation of the defence of a subsequent suit is avoided, by the equitable provision of a public sale to determine the value, and by a judgment rendered with the statute foreclosure for the mortgage debt.

The act under discussion is a *remedial* statute, and such construction ought to be put upon it as will tend to suppress the mischiefs intended to be remedied. 9 Bacon Abr. 257, tit. *Statute.*

The court is well aware of what the law was before the act—a comparison of this with the provisions of the act, will show clearly the intent of the Legislature, and the end to be attained by its enactment.

The case cited from 3 Humph. R., 313, arose under statute of Tennessee, which gave a summary and stringent remedy against a constable *and his sureties*, for a failure to pay over moneys collected, on a few days' notice to the *constable*, only. Under this statute, a judgment was rendered against A. B., constable, and two other persons, not describing or averring them to be sureties, or to have had any notice of the proceeding. The Supreme Court very properly and justly reversed the order, the court below having no jurisdiction of the persons, by notice to them in fact, or constructively, *qua* securities. The two cases from 8 Porter R. pp. 99, 104, arose under a special statute of Alabama, which allowed the State Bank to recover of its debtors by motion, on ten days' notice, and in both these cases it did not appear that the parties were notified. The very summary, and I may add, penal character of these acts, authorized and demanded a most literal construction, and the decisions were doubtless right, but it is respectfully submitted that they have no application to the case at bar. Assuming, then, that the counsel are in error in supposing the question of jurisdiction arises in the present case, I now proceed to discuss the other branch of his proposition, upon which he supposes the question to arise.

2. Is there a subsisting mortgage to be foreclosed? It is not denied that there was a large mortgage debt to be paid by instalments; but it is alleged that the mortgage, having been proceeded upon to

recover the first instalment due, cannot now be enforced for the recovery of the other and remaining instalment.

The argument of the learned counsel in this Court, it seems to me, is based upon an erroneous apprehension of the meaning of the term *foreclosure* in the act of 1824. Foreclosure, at common law, means the shutting out, or exclusion of the equity of redemption of a mortgage—but this meaning is inconsistent with the provisions of the statute. A mortgage being held by the strict rules of the ancient common law to be a sale and conveyance of the thing mortgaged, upon condition—when the condition was broken, the estate became absolute in the mortgagee, and the mortgagor could not force the mortgagee to allow redemption, except in a court of equity; and if the mortgagee desired to cut off and debar him of this right, he might do so by his suit in equity, and, when decree of foreclosure passed, all right and all equity of redemption was forever gone. These strict common law doctrines have been departed from in most of the States of the Union—some by legislative interposition, and some by the action of the courts. The common law is believed to prevail with the most strictness in the New England States. Does *foreclosure* by our statute have any such effect? Certainly not; for although a *formal* decree of foreclosure is directed by the Court, yet it is in fact but *nominal.* Execution is to issue upon the judgment for the debt rendered, with the decree of foreclosure, *as in other cases.* Until a sale actually takes place, the property, possession and legal right of redemption is not barred. If the mortgagor pays the execution to the sheriff, he defeats the foreclosure, and he has a *legal* right to pay. If the sheriff, by direction of the mortgagee, should refuse to accept the payment, a legal tender would be of equal force to defeat and vacate the decree of foreclosure. That the common law in this respect is altered cannot be denied. Even under the common law as it prevails in the New England States, payment and acceptance of the debt, or even a part of it, opens the foreclosure. 8 Vermont R., 164, 6 N. Hamp., 12, 5 Pickering R., 418, 4 Greenleaf R., 495—showing that there the act of the parties may defeat a foreclosure.

Now, in the case at bar, if the decree had been rendered conformably to the ancient law, for a foreclosure of the first instalment, and the mortgagor had subsequently paid it, and the payment had been accepted, would it not defeat the foreclosure here, and open

and vacate the decree ? But it was rendered under the statute—in which the judgment for the debt and the decree must be co-existent, and are dependent upon each other. The statute is imperative, that the mortgagor must set forth and show in his petition the amount actually due ; he must prove it by the production of his evidence of debt, and further verify it by affidavit—the Court awards judgment for the debt thus shown to be actually due—the decree of foreclosure is, in effect, but a direction that the mortgaged property is the primary fund for its discharge, and execution by the statute is awarded as in other cases. In New York, there is a statute providing that the court may, in bills to foreclose, direct the sale of the whole property where part of the debt only is due, and apply the proceeds to the whole debt, with a rebate of interest for such part as is not due ; and under this act, the courts have held that they will so decree only in cases where the mortgaged property is incapable of division. 2 Johns. Ch., 486, 487. 4 Johns. Ch., 534. 5 Paige, 38. We have no statute upon the subject. Indeed, our statute of 1824, for the foreclosure of mortgages, does not provide for any order of sale : it directs execution to issue as in other cases, and which authorises the officer executing to sell only so much of the property as will satisfy the debt. In New York, there is provision by law for a summary foreclosure and sale by advertisement ; and, under this act, it has been held, in the case of a mortgage payable by instalments, if the whole mortgaged property is foreclosed and sold to satisfy the first instalment, subject, however, to the lien of the future instalments, the property is, in the hands of the purchaser in equity, the primary fund for the payment of the future instalments. Cox *v.* Wheeler, 7 Paige's Ch. R., 248.

In Alabama, where the power to foreclose mortgages is yet confined to the equity courts, they have held, that on the first default, a decree of foreclosure shall be rendered, and a sale ordered to satisfy the sum due, and other sales ordered as the future instalments fall due, until the debt is paid, or the property exhausted ; and so in Maryland. But these are chancery courts, and the property is sold by order of the Court, and it is the duty of the Court to prescribe to its officer the mode in which the decrees are to be executed. In Florida, it is sold under execution as in other cases, and the general law directs the officer in the execution of the process.

If the counsel for the plaintiff in error are right in giving to the

*foreclosure*, under the statute, the force and effect of a common law *foreclosure*, then it would seem that the estate of Mr. Kelly, the mortgagee, is absolute at law and in equity, and he has the right to the immediate possession, with a demand for rents, issues and profits, since the date of the decree. If I am right, Mr. Shepard, the mortgagor, is still the owner of the mortgaged property, subject to the lien or incumbrance of the second instalment of the debt, which is now due, and the property may, by the statute, be applied to the satisfaction of the execution issued on the judgment.

The Court will observe, that this question was not presented in the Court below—that the judgment and decree was rendered by the consent and agreement of the party, and no opportunity was afforded, of showing the vacation of the former decree, if, in law and under our statute, such a decree for the recovery of the first instalment, would bar and preclude the recovery of the remaining sum secured by the same instrument. It is not pretended that any portion of the mortgaged property has been executed or in any wise applied to the satisfaction of the former decree ; but the claim to reverse this, rests on the simple ground, that you have proceeded to recover the first moiety of your mortgage debt, and that proceeding concludes and debars you from the recovery of the remaining moiety, although the property on which it is secured remains untouched.

If there is anything in this objection, it is of the most technical character I have ever heard urged in a court of justice, and I have yet to learn that a court will give a strict and technical construction to a statute, which is remedial in its whole effect, to defeat a just claim. The defendant in error is entitled to every just and reasonable intendment, and, if necessary to support the judgment, the Court will construe the consent and agreement endorsed on the petition, as a vacation of the former decree and judgment by the act of the parties.

II.—But this decree and judgment has been rendered by consent and agreement of the parties, endorsed upon the petition, and will the court go behind it for the purpose of reversing the judgment upon purely technical grounds ? Various objections have been presented to this *consent* and *agreement*, and I will proceed to notice them.

1. It is said, the *consent* cannot give jurisdiction. This I have already noticed in my argument to show that the question of jurisdiction does not arise in the case.

2. By referring to the "*consent*," which is incorporated into the record, the court will have no difficulty in seeing that its object was the ease and favor of the present plaintiff in error. Its effect is—1. To acknowledge that he had received due notice of the institution of the suit, which is a waiver of the four months' notice which he is entitled to by the statute. 2. To agree that the petition to foreclose should be filed that day as duly filed, which is a waiver of the filing four months before that day. Both these provisions of the statute are for the benefit and advantage of the mortgagor, and to enable him to have time for his defence, if he has any to make. Surely, a party at any time may waive a right or privilege which he has in law. Can it be denied? But it is said he waived the notice; he did not waive the filing. Look at the consent: it "confesses judgment and agrees that decree of foreclosure may be entered at the same spring term, 1847," at which it is to be filed. He is to be presumed to know the law, and to know also when he is asked to consent, it is because the other party cannot enforce the act to be done. But is it without a surrender of some right on the part of the petitioner? Is it without a consideration? Clearly not. The petitioner, on his part, consents that execution of such judgment and decree shall be stayed till the first day of February, 1848. The whole arrangement shows it to have been the result of mutual agreement and concession. The transaction occurred at the spring term of the Circuit Court which was held in April and May, 1847. If this arrangement had not been made, the mortgagor had not consented to waive the requisition of notice and filing petition four months previous to the term, why, the mortgagee, it is to be presumed, would have given the notice and filed his petition in time to have had his judgment at the fall term of 1847, which occurred in the month of November; ten days after the judgment, his execution would have issued as a matter of course; and by the 1st of December, he would have been prepared to execute his judgment. Now, by the consent rule, he stayed his execution till the 1st day of February, 1848, thus giving to the defendant, the mortgagor, till the first Monday of March, the sale day, to pay off the execution, and thereby satisfy the judgment and vacate the decree for foreclosure. There is no pretence of a defence upon the merits, and the whole agreement shows that the defendant surrenders no actual right thereby, but it was, in fact, a favorable arrangement for him.

But it is said the agreement to confess judgment, or the confession included within the consent, is bad, for two other reasons : 1. It does not state in whose favor the judgment is to be confessed : 2. There is no sum mentioned for which judgment is confessed. It will be recollected that this consent, agreement, or confession, is endorsed upon the petition, which fully states the plaintiff's name, the amount claimed, and all other facts of the case. The consent being endorsed upon it, is to be held, taken, and construed as a part of the consent or confession, and as incorporated in it, and, therefore, complies substantially with the requisition, and shows the objections are not well founded.

The learned counsel, in conclusion, abandoning his design of restricting the consideration of this consent rule, according to its very letter, and without reference to the petition on which it is endorsed, next endeavors, by enlarging its meaning, to bring it within the objection of the statute against powers of attorney to confess judgment, and general releases of error before suit brought. And the process is this : It is a confession of judgment—a confession of judgment bars a writ of error ; therefore, it is a general release of error. The writing which but a few paragraphs before could not, by any possibility, be available as a confession, is now, by force of argument, transformed from a confession of judgment into a general release of error, and so obnoxious to the statute. The position is very forcibly illustrated by the story of the quack doctor, who undertook to cure an attack of fever, by turning it into fits—here, finding his argument not conclusive to himself, he changes his attack, and proposes by argument to turn it into a " general release of error," and then, says he, I can kill it by force of statute. The last effort, I trust, will be as futile as the others.

It is void, say the counsel, because the consent was made before suit brought. Now, as to time, if that be material to the validity, the testimony of the record is, that it was a simultaneous and concurrent act with the commencement of the suit, and was not before it.

III.—Another ground assigned for error is, that an agreement to confess judgment is void under the statute, and Thomp. Digest, 350, is cited. On reference to the statute, it will be found to be directed against powers of attorney, and general releases of error. It does not apply to the case at bar.

IV. Another ground assigned is, that there is error in giving one

foreclosure on two mortgages. It appears from the record, that after the original mortgage was due, the mortgagee consented to a depreciation of the amount or sum of money claimed thereon, and to a further postponement of the debt, and its division into two instalments, and the mortgagor executed a second mortgage, on other property, as additional security for the debt. The agreement is recited in the second mortgage. The debt was the same debt as in the first mortgage, and it is conceived that but one judgment was necessary. No authority has been cited on this point, to show its error.

V.—Another ground assigned is, that there is error in the original judgment, because the property foreclosed is not mentioned.

The decree mentions the property by reference to the original petition and mortgages filed in the cause. On reference to the books of practice and forms in the Courts of Chancery in England, the property is never otherwise described than as " the mortgaged premises in question ;" but that it is argued ought not to be sufficient here, where the proceedings are not recorded after final decree—especially where the decree of foreclosure creates a legal estate in the mortgagee. The counsel has just reversed the order of things in England—the decree of foreclosure is the evidence of a title in the mortgagee, not defeasible at law or in equity by the mortgagor, and there a simple reference to the property as the ' mortgaged premises in question,' is deemed sufficient ; while in Florida, the foreclosure so called gives the mortgagee no estate in the property mortgaged, but it is to be sold under an execution issued as in other cases, under ordinary judgments, and the purchaser takes the property by virtue of the sale under the execution. If the mortgagee obtains the property, it is by virtue of the sale, in the character of purchaser, and not in the capacity of mortgagee. No authority has been cited on this point, nor have I been able to find any.

VI.—Another ground assigned, is, that there is error in the judgment as amended, because it awards execution against the mortgaged property. In this, the plaintiff in error is mistaken. It awards execution against " the mortgaged property according to the statute." The judgment is, therefore, controlled by the law ; and if the law gives a recourse over, after the mortgaged property is exhausted, against the other real and personal estate for any deficiency, it may be had under this decree. The effect of the decree is to di-

rect the execution *primarily* against the fund provided by the express covenant and deed of the debtor.

But if the counsel on the other side are right in supposing that the execution is, by the decree, restricted to the mortgaged property, it is still within the authority of the law, upon the maxim, *omne major in se continet minus*, it being within the power of the court. An act or judgment may be void for exceeding the authority given to do or pronounce it, when the excess cannot be separated from that portion which is within the authority ; but no act or judgment has ever been declared void for not having gone so far as it might have done. Neither can it be declared to be error on the complaint of a party who is not injured thereby. The restriction is against the plaintiff or mortgagee, and he is the injured party, if any one is injured. If it is error, it is an error in favor of the party complaining.

VII.—Another ground assigned for error is, that the amended judgment is incomplete. In compliance with the intimation of the Judge below, the petitioners' counsel amended the judgment by adding thereto a specific description of the property contained in the mortgage, with the appropriate introduction, &c., and to which the court will be pleased to refer. It is contended that a full and complete entry should have been made as the amendment. In this objection, I apprehend there is no force.

VIII.—Another ground assigned for error is, that it does not appear by the amended judgment how much of the original entry is retained, and how much is meant to be abandoned.

The answer to this is, that from reference to the entries, it will appear most fully, that nothing was intended to be abandoned.

IX.—Another, and the last ground assigned for error is, that the judgment, as it now stands is irregularly entered, and inconsistent in its several parts. For the answer to this objection, I crave reference by the Court to the judgment as it stands ; the irregularities complained of in this assignment are not pointed out, neither is the inconsistency in its several parts shewn by specification of the particulars. To the intelligence and justice of the Court is it submitted by the defendants in error.

It appears to me that the several errors complained of, viewed in the most favorable aspect for the plaintiff in error, are of the most technical character—that no injury has been done to him, and that the judgment of the Court below should be affirmed.

*Long & Walker*, for plaintiff in error :

1. The last error assigned (by leave of the Court, and not dis-
cussed in the opening argument,) may, with propriety, be first con-
sidered, viz : That the Court had no jurisdiction in this cause, be-
cause the plaintiff or petitioner had no existing mortgage to secure
his debt when he filed his petition.     The statute under which this
*proceeding* was attempted, gives a court of law a very special juris-
diction, not only to render a judgment for the mortgage debt, but also
to foreclose the mortgage.     It is plain that the statute does not
authorize the Court, upon *petition*, at the *first term*, to foreclose a
mortgage, as is done in equity, and merely order the mortgaged prop-
erty sold ; nor does the statute authorize a judgment to be rendered
for the debt merely, as at law, without a foreclosure *of the mort-
gage*. This is plain.   In order to give the Court jurisdiction at law
to render a judgment for the debt, and foreclose the mortgagor of his
equity or right of redemption by petition, at the first term of the
Court after the filing the petition, it is plain that the petitioner must
not only have a debt due him, but he must also have a valid subsist-
ing mortgage.     This will not be denied.     Now, it is equally plain
from the face of the petition, that the mortgages filed with this peti-
tion had been regularly and formally foreclosed about one year be-
fore the institution of this suit.     The petition states that the mort-
gages were due by two instalments, and that, for the first instalment, a
petition was filed in Leon Circuit Court, a judgment was rendered
on the 2d day of May, 1846, " *and decree of foreclosure of all
right and equity of redemption of or in the said mortgaged property,*"
&c.     If, then, " all right or equity of redemption of and in the said
mortgaged property" had, by " decree of foreclosure," been already
barred and cut off, we think it beyond dispute that there was no ex-
isting mortgage.     There remained no right or equity of redemption
to bar or foreclose in May, 1847, if it had *all* been " foreclosed by
decree" in May, 1846.     The only answer which has been made to
this point is, that this decree of foreclosure of 1846, recited in the pe-
tition, was only as to the *first instalment*.     This answer, we reply,
is a mere matter of fact, for the language is, that " *all* right or equity
of redemption of or in the *said mortgaged property*." Language can-
not be more plain.     No part of the property is reserved from this
decree of foreclosure, nor *any* part of the right to redeem.   In other
words, *all* the right or equity of redemption of *every* part of the

property is specially barred and foreclosed. From this view, it follows that, as petitioner had no mortgage, he had no place in court, and the Court had no jurisdiction to render a judgment for his debt, in the summary and peculiar mode adopted. And here we may remark, that if the Court had no jurisdiction of the cause, consent of defendant could not confer it, even if he had consented. The whole proceeding becomes simply and absolutely void. It is scarcely deemed necessary to cite authorities to prove that when a special, summary and stringent remedy is given to the courts by statute, it must be strictly pursued, in order to give the Court jurisdiction. " If a new remedy be given by a statute in a particular case, this shall not be extended to alter the common law in any other case." 9 Bacon's Ab., title " statute," page 245. " Every fact necessary to give the Court jurisdiction in a *summary* proceeding, must appear of record, to give the judgment validity ; if they do not appear, the judgment is *coram non judice* and void." 3 Yer., 355. 3 Hump., 313— cited 2 supplement to U. S. Digest, page 253, par. 137. Bates *v.* Merchants' Bank, 8 Porter R., 99. Leverett *v.* Pl. and Mer. Bank, 8 Porter R., 104. Webb *v.* Brown, 3 Pike's (Ark.) Rep., 488.

2. But it is contended by defendant in error, that this judgment cannot be now reversed, because it is a judgment by confession, &c. Two answers exist to this position, either of which is deemed sufficient. In the first place, if we are correct in the first position assumed, that the Court had no jurisdiction, because the petition showed upon its face that the petitioner had no existing mortgage, then it is sufficient to refer to the familiar principle, that *consent* cannot confer jurisdiction.

But, if the language of the supposed consent and confession of judgment is examined, it will be found to fall very far short of consenting to what was done by the Court. This alleged agreement or consent is in the record stated to have been endorsed on the petition, and is without date. The record states that the petition was filed on the first day of the Spring Term, 1847, of the Court. It was, then, certainly so written and endorsed on the petition that day, or some previous day. It clearly is not any manner of pleading, for the only pleading allowed under our statute for the " foreclosure of mortgages at common law," is declared to be " objections," which must be filed fifteen days before court. It is no confession of judgment, for that must be *ore tenus*, in the presence of the Court, and addressed to it.

This supposed confession of judgment could not be made to the petitioner, for he could make no use of it, or make it a matter of record. It must be, then, a mere agreement between the plaintiff and defendant, before the filing of the petition, or at that time, and an admission of certain facts. Now, what is thus admitted and agreed to?— In the first place, he acknowledges " due and legal service of notice of intention of petitioner to institute this suit"—that is, he had been notified for four months of this intention. In the next place, he is " consenting that *said* petition (*no* petition having been previously mentioned) shall be filed as of the first day of the Spring Term, 1847, of Leon Circuit Court"—that is, he agreed that petitioner might that day file his petition—a thing he had as good a right to do before as after this agreement, so far as we can perceive. " And I do hereby, under my hand and seal, *confess* judgment, and *agree* that decree of foreclosure be rendered at said Spring Term, 1847, of Leon Circuit Court, with a stay of execution till the 1st day of February, A. D., 1848." Now, if this *confession* had been made to the *Court*, as it must have been to be of any force, and as it clearly was not in fact, it is to be observed that he does not also confess foreclosure, but only agrees that a decree for that purpose may be rendered at the Spring Term, 1847. Now, does all this give the Court jurisdiction ? The petition was only filed on the first day of the term, and Shepard only admits that fact. It should have been filed four months before that time. This is admitted by the counsel for defendant in error, for he contends that that must be inferred from the language of the statute, and from the provision that defendant must, if he defends at all, file his objections fifteen days before court. On this point the language of the statute is imperative, and not merely directory, viz : " And the said petition, together with the original mortgage, shall be filed in the office of the clerk of the court to which the application for foreclosure shall be made, at least four months when the foreclosure is to be of real property, and two months when it is to be of slaves, or other personal property, before the term of the court at which the judgment of foreclosure *shall* or *can* be demanded or *rendered.*" Thomp. Dig. 376. Now the judgment is to be *rendered* by the court, and the terms *shall* or *can* as strictly apply to its action, to wit: the rendering of judgment, as to the action of petitioner, to wit: the demanding a judgment. Leave out the word " demanded" and the sentence would read that the petition, &c., shall be filed four months

before the judgment " shall or *can* be rendered." Is not all distinction destroyed between summary and special remedies by statute, and matters of ordinary common law jurisdiction, if the court may or can render judgment under this statute when the petition has not been filed the length of time prescribed by its express terms ? Has Shepard waived this irregularity ? Surely not. The court, as we have before remarked, can only get jurisdiction in pursuance of the statute—that is by having the petition filed four months before court, with notice to defendant. The notice is admitted, but not the filing according to law.

We will barely suggest, what must be too apparent to need illustration, that a judgment cannot be confessed under *hand and seal*—the thing is absurd, and without meaning. " The rendering a judgment is a judicial act, to be done by the Court only." Mathews *v.* Moore, 2 Mur., 181. It is plain this endorsement on the back of the petition is the cause of the rendition of this judgment, and that the same is and was not a legal and sufficient cause therefor. It is plain that the recital in the face of the decree that the petition had been ' *duly* filed,' is contradicted by other parts of the record, which show it was not filed four months before court, but only on the first day thereof.

Again: This pretended confession of judgment is bad for two reasons not yet mentioned. First, it does not state in whose favor the judgment is so confessed. The name of the petitioner is neither stated in the · ·ption nor in the body of the instrument. If this is a confession that somebody may have judgment, it does not say who, and no one will pretend that a court can do more than record the confession as made, whether in writing or verbally. Secondly, there is no sum mentioned for which judgment is so confessed under hand and seal. This point has been expressly ruled by the Supreme Court of New York, where it is laid down that " a confession of judgment ought to be for a certain and specified sum." Nichols vs. Hewett, 4 John Rep. 423. In that case, pending its trial in the court below, the parties referred the same to arbitrators. Before the award was known or published, the court inquired whether the judgment should be confessed, according to the award when made. To this both parties agreed, and shortly thereafter the award came into court, and was entered accordingly for one of the parties. This judgment was reversed on error, upon the express ground that the confession of judgment was for no particular sum.

Again : But, if for the sake of argument, this could be construed into a confession of judgment, and consequent waiver of errors, the record does plainly show that the same was made before suit brought, and it is therefore void by our statute.    Thompson's Dig., 350. This statute not only makes void all powers of attorney for confessing or suffering judgments to pass, &c., made before action brought, but also expressly makes void " *all general releases of error.*"  If this be a release of error at all, it is only so because it is a confession of judgment, and therefore sufficiently *general* to be embraced within the terms of this statute.    The question of fact then only remains : was it made before or after " action brought ?"  ' If this action was ever legally brought at all, and this is questionable, it certainly was not until the petition was filed.    Now upon examination of the record, it will abundantly appear that this endorsement was upon the petition when handed to the Clerk and filed.    The Clerk would not have permitted a record to be so endorsed, after it was filed, and the record expressly sets it forth as an endorsement on the petition.    No process had issued from nor any paper filed in the court before, and Shepard had only been notified of an intention to institute the suit. From this view of the subject it becomes apparent that if it be pos- sible to confess a valid judgment in a suit before it is instituted, a thing little short of absurd, still such a confession, under our statute, does not operate a general release of error, as in other cases of con- fession of judgment.    It cannot be said that this release of error is not meant by our statute, as it is only a release implied by law from the fact of confessing the judgment—assuming that a judgment can be confessed before action brought—because the words of the stat- ute are " *all* general releases of error."   " All" includes implied releases as well as express.

It is contended by counsel for defendant in error, that in fact the amended decree does not restrict the execution to be issued thereon from issuing as "in other cases," viz : against the goods and chat- tels, lands, and tenements of defendant.   It is also admitted that if this error does exist in fact, it is well assigned if it and all other er- rors were not waived by confessing judgment, &c.    That it is not waived, we have endeavored to show, and will only refer to the lan- guage of the decree to prove that it exists in fact.   Petitioner is to have execution against " *said mortgaged property* according to the statute," &c.   The mortgaged property and no other is mentioned,

of which execution shall be had—whether such execution is to be according to statute or otherwise. But does this reference to the statute help the matter? Is the Clerk to judge what statute is referred to, and then judge what the statute requires? This would be too uncertain. This has been expressly decided in the case of Harman *v.* Childress, 3 Yerger, 426.

To recapitulate briefly:

1. The judgment is void, for want of jurisdiction in the Court. 1. Because the petitioner had no valid existing deed of mortgage, the same having been foreclosed a year before; and 2. Because the petition under our statute had not been filed four months before the term of the court at which the judgment was rendered—and if this be true, consent, if given, cannot confer jurisdiction.

2. The judgment is erroneous, if not void. 1. Because the endorsement of Shepard upon the petition, which is relied upon to justify the rendition of the same, was made before the filing of petition or institution of the suit. 2. Because the pretended confession of judgment does not mention the person in whose favor the confession is made. 3. Because no sum or amount is named, for which judgment is confessed. We will not add to the argument of our colleague (Mr. Archer) upon the other errors assigned.

The judgment should be reversed, and the cause remanded with instructions to dismiss the petition.

LANCASTER, Justice, delivered the opinion of the Court:

The last assignment of error is first noticed in the briefs of counsel, and will, therefore, be first disposed of by this Court. It alleges the Court had no jurisdiction, under the statute, to render judgment for the debt, and foreclosure of the mortgages, because from the petition it appears the mortgages had been foreclosed at a former term of the Court, when judgment was rendered for an instalment due on them, and, therefore, there remained no mortgages now to foreclose. Admitting the facts to be correct, it is difficult to see how they affect the jurisdiction of the Court. *Jurisdiction* consists in authority to try the subject-matter of the suit, and over the person of the defendant. These two requisites attaching, it would be difficult, if not impracticable, successfully to assail the jurisdiction even of a court of special powers. But that the Circuit Courts of this State are

courts of general original jurisdiction, will be abundantly manifest to every one who reads the 6th clause of the 5th article of our State Constitution : " The Circuit Courts shall have original jurisdiction in all matters, civil and criminal, within this State, not otherwise excepted in this Constitution ;" and by the 8th clause of the same article, they are invested with the original equity jurisdiction, until the General Assembly shall establish and organize a separate equity court or courts with that jurisdiction. That has not yet been done, and it is not known that the Constitution makes any other exception to the original jurisdiction of the Circuit Courts.

The Circuit Court was then a court of general original jurisdiction, and having jurisdiction of the foreclosure of mortgages, this suit was brought to foreclose the mortgages therein set forth, as well as for judgments for the sum alleged to be secured by them, as owing and due from defendant to plaintiff in the action. This was the subject-matter of the suit, and we apprehend no one will seriously deny the jurisdiction of the Circuit Courts over such a subject-matter. But that the jurisdiction may properly attach to render judgment, it is necessary also for the Court to have jurisdiction of the party defendant. The ordinary mode to acquire this jurisdiction over the party defendant is by *summons ad respondendum*, admonishing him to appear in court and defend against the suit. By law this summons should be served on the defendant by the officer of the Court, at least ten days' before the first day of the term ; yet an acknowledgement of service endorsed on the writ by the defendant, or an appearance in court and plea to the merits, or confession of judgment, will be sufficient evidence of the court's jurisdiction over the person of the defendant, and so, it is believed, has been the uniform practice in the courts, from the date of the act to regulate judicial proceedings.

These proceedings were instituted under the act of December 11th, 1824, before referred to, which authorizes courts of law, in addition to the power before possessed, of rendering judgment for the debt due plaintiff by defendant, to foreclose a mortgage given to secure its payment, and to issue execution as in other cases. But in this particular case, the law requires personal service of notice of the intention of the party to institute his suit, and that service of this notice shall be made by the officer appointed to serve writs issuing out of and returnable to said court, four months, when the foreclosure is to be of real property, before the term of the Court at which judg-

ment shall be rendered. It also requires that the petition for judgment and foreclosure, together with the original mortgage, shall be filed in the office of the clerk of the Court, at least four months before the term of the Court, at which judgment of foreclosure of real estate shall or can be demanded or rendered.

These provisions are clearly intended for the benefit and protection of the defendant, and he has an undoubted right to insist upon their literal and full performance, before a valid judgment and foreclosure on a mortgage can be rendered against him, unless he thinks proper to waive them.

The former was intended, perhaps, partly to afford him time to redeem, as well as time to prepare for his defence ; the latter that he might understand and inspect the demand against him, as well as afford him time to mould that defence. If it was shown the subject matter of this suit was not comprehended by the statute of 1824, or it was doubtfully comprehended, or that a prior judgment at law had been given upon the identical demand for which this suit was instituted, according to the decisions of this Court, in 1 Flor. R., 182, the statute affording a new remedy should be rigidly construed, so as not to take jurisdiction in any doubtful case. The requirement of a statute for bringing a party defendant before the Court is never so rigidly, but only substantially observed. The act of 1828, regulating judicial proceedings, provides for issuing process at the commencement of actions at law, (different from the common law writ of *capias ad respondendum,*) which, by the act, is to be served by the officer at least ten days before the first day of the term to which it is returnable. By the common law, it is required to have the body of the defendant in custody, to give the Court jurisdiction of the person ; yet here a summons, regularly served, as required by the act of 1828, gives the Court jurisdiction of the person of the defendant. This act greatly modifies, in many respects, the practice as at common law, yet no one has thought or claimed that it should be construed strictly. The courts in practice have held, if a party acknowledges service on the back of the writ, it is good. If a party file a declaration, and the defendant plead thereto by confession of judgment, without writ issued or served, it is good. Yet the statute no where by express enactment provides for these cases, but they have been continually held to be within the reason of the act; and this practice, upon a sound construction of the statute, it is not doubted

is correct.　The Court can discern no good reason why the statute of 1824, to regulate the foreclosure of mortgages at common law, so far as respects the mode of summoning the defendant into court, or the time of filing the petition for foreclosure, should not be subjected to the same rule of construction.　"An acknowledgement by the defendant of service of the writ, and a waiver of a particular entry required in the case, is sufficient to give jurisdiction of the person, and every thing consistent with the record will be intended to sustain the judgment."　9th Porter's R., 291.

The reasons assigned in this case against the jurisdiction of the Court, appear rather to be such as might have been made in the Court below to the count or petition, and to the writ.　But, according to logical reasoning and logical practice, they were waived by a consent of judgment.　Had no written acknowledgement or consent been executed, the Court certainly would not have proceeded to judgment or foreclosure until notice had been served on defendant, and petition filed according to the requirements of the statute—assuming that these objections could be only properly addressed to the Court, and the writ would be an admission of the jurisdiction of the Court.

But it is urged that petitioner showed by his petition he had no existing mortgage to secure his debt at the time of filing it, and, therefore, the Court had no jurisdiction.　This objection, it seems to the Court, would best be made by way of plea in bar to the action, and that plea would admit the jurisdiction of the Court.　Yet we cannot see how in any shape it should avail the defendant, who, upon the back of the very petition in which this allegation is contained, confesses judgment for the sum therein alleged to be due, and agrees that a decree of foreclosure shall be rendered on the mortgages therein set forth and sought to be foreclosed, at the Spring Term of the Court in 1847.　Is it asked of this Court to decide there was no existing mortgage in favor of petitioner against the defendant, Shepard, when he, Shepard, under his hand and seal, agrees there is, and that it may be foreclosed, and this agreement, too, made, in consideration of a stay of execution?

The rule of law, that where the Court has not jurisdiction of the subject-matter of a suit, consent cannot give it jurisdiction, is, without doubt, correct; but as to the person of the defendant, the formal service of the process, or the time of filing the declaration or petition,

though necessary steps, are rendered unnecessary, if the defendant appears and pleads issuably, or confesses judgment—and having done so, he ought not afterwards to be permitted to take advantage of irregularities in those respects. We think, therefore, the Court had jurisdiction of the suit, by having jurisdiction both of the subject matter of the suit, and by the defendant's acknowledgement of due service of process, of the filing the petition on the first day of the term, and consenting that judgment might be rendered at the said term and foreclosure decreed, with a stay of execution, &c. This assignment of errors is, therefore, overruled.

The first error assigned, and next to be considered is this : The agreement to confess judgment is void under the statute, which enacts, ' All powers of attorney for confessing or suffering judgment to pass by default or otherwise, and all general releases of error made or to be made by any person or persons whatsoever within this State before action brought, shall be, and are hereby declared to be, absolutely null and void.' Thom. D., 350. Upon this assignment of error, it will sufficiently express the views of the Court to say, the agreement of the defendant, under his hand and seal to confess judgment, is not a power of attorney to confess judgment, and is not within the prohibition of the statute. Neither does it appear from a careful examination of that agreement, written on the back of the plaintiff's petition, that it was made before action brought. They appear rather to have been done simultaneously, and if necessary to give effect to an agreement made on a valuable consideration, to wit : a delay of payment. The Court will understand it to be admitted that notice of the intention of the plaintiff to bring his suit (which notice is the institution of the suit) was given before the defendant, Shepard, signed any agreement on the back of the petition. We think this assignment of error should be overruled.

The second error assigned, is, " there is error in giving one foreclosure on two mortgages."

The debt, which the two mortgages were given to secure, was one debt, due from the defendant, Shepard, to the plaintiff, Kelly. The last mortgage was cumulative or additional security on the first, and both were but security for one debt. If the debt had been paid, which they had been made to secure, that act would have discharged both mortgages ; if it became necessary to push that debt to judgment, no good reason is perceived why the equity of redemption should

not be foreclosed on all the property mortgaged to secure its payment; and this, we think, within the equity of the statute, the Court had power to do. This assignment of error is, therefore, we think, not well taken, and is overruled.

Third error assigned, "there is error in the original judgment, because the property foreclosed is not mentioned."

So much of the original decree as is material in this assignment of error, is in these words : " And it is further adjudged, ordered and decreed, that the said John S. Shepard, mortgagor, · and all persons claiming or to claim by, through, or under him, shall be, and they are hereby forever foreclosed and barred of, and from all right and equity of redemption of or in the property mortgaged by the said deeds of mortgage in said petition set forth, and therewith exhibited, and every part thereof, and that execution issue according to the statute in such case made and provided, after the first day of February, Anno Domini, one thousand eight hundred and forty eight, until which date execution will be stayed according to the agreement before stated." It is perceived that, by this original decree, the equity of redemption of or in the property mortgaged by the said deeds of mortgage exhibited with the petition and therein set forth, is foreclosed. *Id certum est quod certum reddi potest.* And so far as can be collected from the forms in the *Courts of Chancery in England, it is* believed no more specific or certain description of the property is contained in the decree of foreclosure than the mortgaged premises in question. It is argued if such a decree be good in England, it ought not to prevail here, because the exhibits are not recorded after final judgment. By legal intendment, the files of the Court are as secure as the records, and if this were not so, the law requires mortgages to be recorded when or soon after they are executed. This, by the petition and exhibits, appears to have been done, and admitting the files of the Court should be lost or destroyed, it is fairly presumable, the record of these mortgages is as safe as the record of the judgment. We think the property, intended to be foreclosed, is sufficiently designated by reference to the mortgages in which it is specified, and a specific statement of it in the decree of foreclosure, is immaterial and unnecessary. The third error assigned is therefore, in our opinion, not well grounded, and is overruled.

The fourth error is, " There is error in the judgment as amended, because it awards execution against specific property."

The 8th sec. of the act of 1824, Thompson's Digest, 377, is in the words following :  " The judgment of the Court on the foreclosure o. a mortgage, shall in all cases be entered up and filed, and execution shall issue thereon as in other cases."  By the law applicable to other cases, execution goes against the lands and tenements, goods and chattels, of the defendant in execution.  The amended decree, after specifying the mortgaged property, adds,  " and that said petitioner have execution against said mortgaged property, according to the statute in such case made and provided."  It is contended if this be error, it is in favor of the plaintiff in error, and unless he is injured by it, he cannot take advantage of it.  Without contravening the force of this objection, or without stopping to enquire narrowly, whether a party might not be injured by subjecting a specific fund (if a favorite fund) to execution, when the law requires that execution shall be against the lands and tenements, goods and chattels of the defendant, upon an examination of the original judgment and decree entered in this cause, it seems to the Court that said judgment and decree is good and valid in law ; and that the amended judgment and decree entered on Friday, the 7th day of April, A. D., 1848, is, for the reasons set forth in the fourth assignment of errors, erroneous : wherefore, the said assignment of error, so far as applicable to said amended decree, is allowed and sustained.

The *fifth, sixth* and seventh errors assigned, having reference to the judgment as amended, that amended judgment being to be reversed and vacated, it is deemed unnecessary to examine.

It is, therefore, ordered, adjudged and decreed that the original judgment and decree of foreclosure, rendered in this cause at the Spring Term, eighteen hundred and forty-seven, be in all things affirmed, and that execution issue thereon according to law ; and that the amended decree of foreclosure, rendered *nunc pro tunc* in said cause on the 7th day of April, A. D., 1848, be set aside and reversed, and that the appellant recover his costs, &c.